[Crim. No. 4983.   First Dist., Div. One.   Dec. 10, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. FRANCIS FREDERICK KRAPS, JR., Defendant and Appellant.

676

James W. Stewart, Ralph J. Steinberg and Collins, Hays & Stewart for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—On this appeal by defendant from an order granting him probation after he was convicted for violating Health and Safety Code section 11530 (possession of marijuana),[1] the sole contention is that defendant was subjected to an illegal search and seizure by the police officer who arrested him and that therefore the marijuana which the search produced should have been excluded from evidence. The trial court ruled against defendant on this issue based on the testimony contained in the transcript of the prelimi-

---

[1]Defendant purports to appeal from "the judgment" of the trial court. However, the record discloses that following defendant's conviction the proceedings in the instant case were suspended without imposition of sentence and probation was granted pursuant to defendant's motion. Thus, there was in fact no judgment entered in the instant action. However, under the 1951 amendment to Penal Code, section 1237, subdivision 1, an order granting probation is deemed to be a final judgment for purposes of appeal. Since that amendment it has been held that an appeal which purports to be taken from the judgment may be treated as an appeal from the probation order and that for purposes of appeal the two are interchangeable terms. (*People* v. *Robinson*, 43 Cal.2d 143, 145 [271 P.2d 872]; *In re Bine*, 47 Cal.2d 814, 817 [306 P.2d 445]; *People* v. *Goldstein*, 136 Cal.App.2d 778, 793 [289 P.2d 581]; *People* v. *Easley*, 148 Cal.App.2d 565, 566 [307 P.2d 10]; *People* v. *Bittick*, 177 Cal.App.2d 479, 481 [2 Cal.Rptr. 378]; cf. *People* v. *Rissman*, 154 Cal.App.2d 265, 266-267 [316 P.2d 60].)

nary hearing, defendant, personally and by his counsel, having waived a jury trial and stipulated that the entire cause be submitted on this transcript. ■ We hold that the concatenation of events surrounding the arrest justified the search and seizure.

The essential facts adduced at the preliminary hearing wherein Officer Hall of the San Bruno Police Department was the sole witness are as follows: On September 7, 1964 at 3:10 a.m., he and his partner, Officer Robert Frommer, were on a routine patrol in San Bruno in their patrol car. Near the intersection of San Bruno and San Mateo Avenues, Hall observed defendant and another man, Mr. Davitt, standing on the sidewalk in front of a used car lot. As the officers approached, defendant and Davitt started walking east on San Bruno Avenue. Hall stopped his patrol car, turned on his red light, and called out to the two men that he would like to talk to them for a minute. Both men came over to the patrol car and in response to Hall's questioning and request for identification they gave the officers their reason for being in that neighborhood and furnished the officers with their drivers' licenses. Hall then called his headquarters for a routine check on defendant and Davitt and was advised that a traffic warrant was outstanding against defendant. Hall then informed defendant that he was under arrest upon the traffic warrant and ordered defendant and Davitt to lean against the police car while the officers conducted a "feel search." In addition Hall told defendant to empty out his pockets onto the fender of the car. Defendant complied with this request and, among other things, produced some cigarette papers from his pants' pocket. In response to Hall's questions about the cigarette papers, defendant indicated that he used them for rolling tobacco. Hall then patted defendant's coat again, felt a bulge in his jacket pocket and asked defendant what was in the pocket. Defendant replied that "he just had a little container containing film." Hall then removed the film can from defendant's pocket and concluded after shaking it that it contained seeds or greens. Over defendant's protestations, Hall opened the can and discovered that it contained vegetation resembling marijuana. Defendant then admitted that the substance was in fact marijuana. In addition, at the preliminary hearing it was stipulated that the contents of the film container was marijuana seed. Both the cigarette papers and the film container with its contents were introduced into evidence at the pre-

liminary hearing over defendant's objection and motion to suppress.[2]

It is conceded that Hall was initially entitled to stop defendant and detain him for questioning.[3] This concession recognizes the established rule in this state that circumstances short of probable cause to make an arrest justify an officer's stopping pedestrians or motorists on the street for questioning. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) It should be noted that this rule has been interpreted by some courts as giving the police an absolute right to stop and question persons who are outdoors at night. (See *People* v. *Wiley,* 162 Cal.App.2d 836, 839 [328 P.2d 823]; *People* v. *Stewart,* 189 Cal.App.2d 176, 178 [10 Cal.Rptr. 879]; see also *People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531].) In other cases the invocation of this rule has been conditioned upon the existence of suspicious or unusual circumstances, irrespective of whether the temporary detention is in the daytime or nighttime. In these cases the *Mickelson* rule has been interpreted to mean that in order for a police officer to detain a person temporarily for questioning under conditions not amounting to probable cause for arrest there must exist *some* suspicious or unusual circumstance authorizing this limited invasion of a citizen's privacy. (*Hood* v. *Superior Court,* 220 Cal.App.2d 242, 245 [33 Cal.Rptr. 782]; *People* v. *Cowman,* 223 Cal.App.2d 109, 116 [35 Cal.Rptr. 528]; see *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706]; and see *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52]; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57]; *People* v. *Beverly,* 200 Cal.App.2d 119 [19 Cal.Rptr. 67]; *People* v. *Anushevitz,* 183 Cal.App.2d 752 [6 Cal.Rptr. 785]; *People* v. *King,* 175 Cal.App.2d 386 [346 P.2d 235]; *People* v. *Porter,* 196 Cal.App.2d 684 [16 Cal.Rptr. 886]; *People* v. *Stewart, supra,* 189 Cal.App.2d 176; *People* v. *Evans,* 175 Cal.App.2d 274 [345 P.2d 947]; *People* v. *West,* 144 Cal.App.2d 214 [300 P.2d 729]; *People* v. *Jones,* 176 Cal.App.2d 265 [1 Cal.Rptr. 210]; *People* v. *Nichols,* 196 Cal.App.2d 223 [16 Cal.Rptr. 328]; *People* v. *Burch,* 196 Cal.App.2d 754 [17 Cal.Rptr. 102]; *People* v. *Koelzer,* 222 Cal.App.2d 20 [34 Cal.Rptr. 718].) In *One 1960 Cadillac Coupe,* the applicable rule was stated thusly: "[A] police officer in the discharge of his

---

[2]In addition, defendant's motion to strike Hall's testimony as to what he observed in the container was denied.

[3]This concession was made by defendant's counsel at oral argument.

duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties." (Pp. 95-96.) In the instant case we have no doubt that the circumstance of two men standing in front of a used car lot at 3:10 a.m. was such as to indicate to a reasonable police officer that the proper discharge of his duties called for the stopping of such persons for the purpose of questioning them as to their identity and the reason for their presence in the locality.[4]

Since the detention and questioning of defendant was proper, we turn to the issue of the legality of the search of his person which produced the subject marijuana. Initially we note that Hall was justified in arresting defendant upon Hall's making a record check on defendant and discovering that there was an outstanding traffic warrant for defendant's arrest. Since this information was received through official channels, Hall was justified in relying upon its trustworthiness. (*People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856]; *People* v. *Jackson,* 202 Cal.App.2d 569, 574 [21 Cal. Rptr. 44]; *People* v. *Stewart, supra,* p. 178; *People* v. *Schellin,* 227 Cal.App.2d 245, 251 [38 Cal.Rptr. 593].) Moreover, under Penal Code section 842, Hall was entitled to arrest defendant, although Hall was not in possession of the outstanding arrest warrant. (See *People* v. *Feeley,* 178 Cal.App. 2d 100, 105 [3 Cal.Rptr. 529]; *People* v. *Stewart, supra,* p. 179.)

The search which followed the arrest was proper because it was incident to a lawful arrest. (*People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 459, 366 P.2d 823]; *People* v. *Cedeno,* 218 Cal.App.2d 213, 218 [32 Cal.Rptr. 246].) ▮ Defendant urges that the search was unlawful because it lacked a definite purpose and was unreasonable in its scope. Specifically defendant argues that since the arrest was for a traffic offense there was no purpose justifying the search. It is well established that upon lawfully arresting a suspect the police are entitled to conduct a cursory search for weapons. (*Agnello* v. *United States,* 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed.

[4]We note subdivision (e) of section 647 of the Penal Code applying to "Disorderly Conduct," which provides that a person is guilty of a misdemeanor "Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification."

145, 51 A.L.R. 409]; *People* v. *Stewart, supra,* p. 179; *People* v. *Strelich,* 189 Cal.App.2d 632, 635 [11 Cal.Rptr. 807]; *People* v. *Reed,* 202 Cal.App.2d 575, 579 [20 Cal.Rptr. 911]; see Pen. Code, §§ 833, 846.) Accordingly, since the search of defendant's person was lawful, the fact that it turned up marijuana instead of weapons did not render the marijuana inadmissible in evidence. Police officers acting properly in the course of their duty in making a search of a person or premises are not required to blind themselves to contraband which is in plain sight simply because it is disconnected with the initial purpose of the search. (*People* v. *Shafer,* 183 Cal.App. 2d 127, 128-129 [6 Cal.Rptr. 594]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Ortiz,* 147 Cal.App. 2d 248, 251-252 [305 P.2d 145]; *People* v. *Littlejohn,* 148 Cal.App.2d 786, 791 [307 P.2d 425]; *People* v. *Strelich, supra,* p. 636; *Harris* v. *United States,* 331 U.S. 145, 154-155 [67 S.Ct. 1098, 91 L.Ed. 1399].) ▮ Moreover, the fact that the search was not connected with the offense stated in the traffic warrant did not render the seizure of the marijuana illegal. (*People* v. *Strelich, supra,* p. 636; *Harris* v. *United States, supra,* pp. 154-155; *Abel* v. *United States,* 362 U.S. 217, 235-237 [80 S.Ct. 683, 4 L.Ed.2d 668]; and see *People* v. *Stewart, supra,* p. 179.)

*Stewart* involved a factual situation identical to that in the instant case—namely, the defendant was stopped for questioning on the street at night by the police, who then made a record check on the defendant and learned that there was a traffic warrant outstanding against him. The officers then placed the defendant under arrest on the traffic warrant. During the routine search which followed, five cigarettes were found in the defendant's pocket, which he admitted were marijuana cigarettes and which were subsequently introduced into evidence at the defendant's trial for possession of marijuana. The appellate court made the following comment concerning the propriety of the search of the defendant's person: "[I]t would further appear that having so arrested the appellant, they were justified in searching him. Any officer who, when arresting an unknown person, fails to search that person before commencing to transport him to jail would be derelict in common caution and in all probability would experience some unpleasantness." (P. 179.) Similarly, in *Strelich,* two police officers, after verifying the existence of traffic warrants against the defendant and the fact that he had served a term in prison for posses-

sion of narcotics, went to the defendant's house and placed him under arrest upon the traffic warrants. Thereafter, pursuant to a "pat search," one of the officers discovered a vial containing a leafy substance which he identified as marijuana. The reviewing court held that the arrest was in performance of a manifest duty, that the marijuana was recovered in the course of a lawful search of the defendant's person, and that the fact that the search was not connected with the offense stated in the warrant did not render the seizure illegal.

Defendant relies strongly upon *People* v. *Simon, supra,* 45 Cal.2d 645. There the defendant and his friend, a minor, were observed walking in a warehouse district at 10:40 p.m. by a police patrolman. The defendant's friend was in possession of a bottle of liquor. The officer stopped the defendant and his friend and searched them both, finding a marijuana cigarette in the defendant's pocket. The defendant was then arrested and charged with possession of narcotics. The Supreme Court, in affirming an order setting aside the information under Penal Code section 995, held that the officer did not have probable cause to arrest the defendant and that therefore the search of his person which produced the marijuana was illegal. It is readily apparent that *Simon* is distinguishable on its facts from the present case in that here the police were justified in arresting defendant under the authority of the traffic warrant.

The order is affirmed.

Sullivan, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 2, 1966.